IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL ASSOCIATION OF
MANUFACTURERS
1331 Pennsylvania Avenue, N.W.
Washington, DC 20004,

        Plaintiff,

        v.

REED ELSEVIER, INC.
275 Wyman Street
Waltham, MA 02451

        and

REED ELSEVIER GROUP, plc
d/b/a Reed Exhibitions
383 Main Avenue
Norwalk, CT 06851,

        Defendant.

## COMPLAINT FOR SPECIFIC PERFORMANCE AND INJUNCTIVE RELIEF

National Association of Manufacturers ("NAM") by counsel and for its Complaint, states as follows:

### NATURE OF CASE

1.     This is an action for specific performance to require defendants Reed Elsevier, Inc. and Reed Elsevier Group, plc (collectively "Reed") to perform the remaining three years of Reed's agreement to produce the major manufacturing trade show in the United States with NAM as the sponsor.

500087307v1

2.  NAM also seeks preliminary and permanent injunctive relief to enjoin Reed's sale of the show. The sale will render the Reed incapable of performing its contract with NAM and will leave NAM without a remedy.

## PARTIES

3.  Plaintiff NAM is a not-for-profit corporation organized under the laws of the state of New York with its principal place of business in Washington, D.C. NAM is the nation's largest manufacturing trade association with 11,143 members.

4.  Defendant Reed Elsevier, Inc. is a corporation organized under the laws of Massachusetts with its principal place of business in Massachusetts. Defendant Reed Elsevier Group is a corporation organized under the laws of the United Kingdom with its principal place of business in London, England. Both Reed entities do business in the United States under the name Reed Exhibitions. Reed Exhibitions has its principal place of business in Norwalk, Connecticut.

## JURISDICTION AND VENUE

5.  The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the suit is between citizens of different states and between a citizen of the United States and a citizen of a foreign state, and the amount in controversy exceeds $75,000.00.

6.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) (2) and (d) because a substantial part of the events or omissions giving rise to the claim occurred in this district and because defendant Reed Elsevier Group is an alien that may be sued in any district.

500087307v1

## FACTS

7. NAM and Reed have had a remarkably successful relationship for over fifteen years pursuant to which NAM has been the primary sponsor of a trade show owned and produced by Reed known as "National Manufacturing Week." According to Reed, National Manufacturing Week over the past fifteen years has "helped more than 200,000 U.S. manufacturers innovate, integrate and become productive enterprises."

8. National Manufacturing Week is attended by manufacturers, service providers, consultants, media, elected representatives, and governmental officials. They attend conferences and lectures on best practices, meet and hear government and industry leaders, and view new and innovative products that are displayed by the exhibitors in attendance. At the 2005 show, there were almost 1,000 exhibitors in space in excess of 100,000 square feet, and over 250 conferences were held.

9. NAM and Reed executed their first sponsorship contract in 1991. In June 2004, NAM and Reed renewed their contractual relationship pursuant to a "Contract Renewal," attached as Exhibit A hereto, executed by Reed Exhibitions.

10. Pursuant to the sponsorship agreements, NAM is the primary sponsor of National Manufacturing Week and a number of "shows within the show" (collectively called the "Event" in the recent Contract Renewal), all of which occur over a week-long period in March of each year. Pursuant to the Contract Renewal, Reed is obligated to "organize, promote and manage" the National Manufacturing Week trade show for years 2005 – 2009. Reed must pay NAM a minimum of $200,000 per year for its sponsorship along with other compensation based on square footage used by exhibitors and the number of attendees at the show.

500087307v1

11. NAM's name and reputation are closely linked to the National Manufacturing Week trade show in the minds of both NAM members, non-member event registrants, the public and the press. Press articles frequently refer to the National Manufacturing Week trade show as "NAM's annual gathering of manufacturers" or "NAM's trade show." This close identity is the result of the fifteen years of NAM sponsorship and Reed's widespread use of the NAM name in all aspects of marketing of the show. Advertising materials prepared by Reed refer to the show as "presented by NAM" and "produced by Reed Exhibitions." Those materials are sent annually to hundreds of thousands of prospective registrants and exhibitors. Pursuant to its obligations under the Contract Renewal, NAM promotes the National Manufacturing Week trade show on its website, in fax and e-mail "blasts" to its members, and in its print and on-line newsletters. Both Reed and NAM normally commence promotional activities for the next show as soon as the previous spring show is closed.

12. Members of NAM participate in the show as both registrants and exhibitors. Those members benefit from the information delivered at the conferences, from the ability to display their products and view the products of others, from contacts with senior governmental and industry leaders, and from the opportunity to interact with other NAM members and NAM leadership.

13. Substantial intangible benefits also flow to NAM itself from the National Manufacturing Week trade show and the identity of NAM's name with it. The show establishes NAM as a thought leader for innovative industrial solutions. It confirms NAM's reputation as the primary organization that represents the interests of United States manufacturers. As a result of the sponsorship, NAM retains members and attracts new

members. Media coverage of the show enhances the image of NAM and enables it to attract keynote speakers for the show such as the United States Secretary of Commerce. The exposure NAM gains as the sponsor of the trade show furthers its ability to work with governmental officials to promote the interests of its members.

14. On May 10, 2006, Reed announced an agreement in principle to sell the National Manufacturing Week show to Canon Communications, LLC ("Canon"), along with seven other trade shows and a magazine. The announcement stated that Reed wanted to concentrate its events business in other sectors of the economy such as healthcare. Senior Reed officials told NAM that Reed's industrial show portfolio is "extremely profitable" but is not growing as rapidly as Reed would like.

15. On information and belief, the purchaser Canon has no intent to honor the NAM sponsorship agreement set forth in the Contract Renewal, and Reed officials have said that in their view the Contract Renewal is not assignable in any event.

16. If the sale of the National Manufacturing Week trade show is consummated, Reed and Canon will benefit to the great detriment of NAM. Reed will obtain a higher sale price because of the profitability of the show made possible by the NAM sponsorship. Canon, which will continue to produce the show without NAM sponsorship, will reap the benefits of the prestige of the show created by the identity of the show with NAM. NAM meanwhile will suffer the loss of the income stream guaranteed by the Contract Renewal along with the many intangible benefits that flow from its long relationship with the show.

17. In early May 2006, Reed advised NAM that it planned to close on its contract with Canon within 30 days. In anticipation of the sale and of a 2007 show without NAM

sponsorship, Reed's early promotional materials for the 2007 show make no mention of NAM.

18. The Contract Renewal is a binding contract creating unequivocal obligations on the part of Reed, which has no right to cancel or to assign the agreement. NAM has complied with all its obligations under the Contract Renewal and is ready, willing and able to continue to perform under it.

## COUNT I – ANTICIPATORY BREACH OF CONTRACT

19. NAM repeats and incorporates by reference each of the allegations in paragraphs 1 – 18 as though set forth herein.

20. Reed's announcement of its intent to sell the National Manufacturing Week show, which will render Reed incapable of performing the Contract Renewal, is a repudiation of that agreement.

21. If the sale is not prevented and Reed is not ordered to perform its agreement, NAM will suffer immediate and irreparable injury as well as the loss of monetary payments due under that agreement. NAM has no adequate remedy at law.

## COUNT II – BREACH OF CONTRACT

22. NAM repeats and incorporates by reference each of the allegations in paragraphs 1-21 as though set forth herein.

23. In anticipation of its sale of National Manufacturing Week and as part of its repudiation of the Contract Renewal, Reed has breached its current obligations under that agreement. Reed's press release written to summarize the 2006 show and promote the 2007 show does not even mention NAM. The release quotes a representative of an NAM board

member without mentioning any association with NAM. This summary is completely at odds with the press release summarizing the 2005 show, which described NAM as the "sponsor of National Manufacturing Week," quoted Governor John Engler as President of NAM, and closed with a description of NAM and a link to its website.

24. NAM is suffering immediate and irreparable harm as a result of Reed's breach of contract for which NAM has no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, NAM respectfully requests that the Court:

a. Order that Defendants specifically perform the Contract Renewal for the remainder of its term and render performance consistent with that rendered in previous years;

b. Preliminarily and permanently enjoin defendants and all persons acting on their behalf from selling or offering to sell the National Manufacturing Week trade show or any assets or rights needed for Reed to perform its obligations under the Contract Renewal;

c. Reasonable attorney's fees and costs; and

d. Such other relief as the Court deems just and proper in law as in equity.

Dated: May 26, 2006

Respectfully submitted,

*/s/ Jack McKay*

Jack McKay (DC Bar No. 159335)
Jerald A. Jacobs
Jennifer Behr
PILLSBURY WINTHROP SHAW PITTMAN LLP
2300 N Street, NW
Washington, DC 20037-1128
(202) 663-8439