IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NATIONAL ASSOCIATION OF MANUFACTURERS<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>REED ELSEVIER INC.<br><br>　　and<br><br>REED ELSEVIER GROUP plc<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:06CV00990 (HHK) |

## REED ELSEVIER INC.'S AND REED ELSEVIER GROUP PLC'S STATEMENT OF THE CASE

Pursuant to the Court's July 17, 2006 Order For Initial Scheduling Conference, Defendant Reed Elsevier Group plc and Defendant/Counterclaim Plaintiff Reed Elsevier Inc. hereby submit their Statement of the Case, and show the Court the following:

Since November 18, 1991, Reed Exhibitions ("Reed") and Plaintiff National Association of Manufacturers ("NAM") have been engaged in a joint venture for the single purpose of promoting National Manufacturing Week, an annual event that draws exhibitors and sponsors seeking the attention of the manufacturing sector. This relationship was established and maintained through a series of

contracts, the first of which was executed on November 18, 1991, and the most recent of which was executed on June 14, 2004 (the "Contract Renewal"). As part of their joint venture, the parties agreed in the Contract Renewal that NAM would, inter alia, (1) arrange for two keynote speakers to be confirmed by September 1 of each year, (2) market National Manufacturing Week, in consultation with Reed, to its members with both direct mail and email exclusively promoting National Manufacturing week, and (3) work with Reed to obtain sponsorships and exhibitors for the mutual benefit of the parties. Anticipating that Reed might someday decide to sell National Manufacturing Week, the Contract Renewal specifically provided that "NAM shall have the right to terminate this Agreement immediately should [Reed] sell, or announce its intention to sell, [National Manufacturing Week] or any of the shows within the event."

NAM, however, did not live up to its obligations under the Contract Renewal. For example, in some years, NAM did not confirm the keynote speakers required by the agreement, in others it confirmed them far beyond the September 1 deadline. Also, NAM did not send the required number of direct mail and email promotions to its members. When NAM did send promotions, they did not exclusively promote National Manufacturing Week as required by the Contract Renewal, but instead promoted membership in NAM, sometimes at discount prices, which diluted the National Manufacturing Week brand. Rarely, if ever, did

- 2 -

NAM consult with Reed regarding the promotions it was promulgating as required by the Contract Renewal. NAM even competed with Reed for sponsorships and exhibition space, in some instances interfering with Reed's established customer relationships in the process. NAM's competitive actions reduced the amount of income available to the joint venture and resulted in significant damages to Reed.

Exercising it's enumerated rights under the Contract Renewal, Reed sold its stake in National Manufacturing Week. In response, rather than invoking the exclusive remedy provided in the Contract Renewal, of termination of the agreement, NAM filed its Amended Complaint against Defendants Reed Elsevier Inc. and Reed Elsevier Group plc claiming $3.5 million in damages as a result of Reed's decision. On July 13, 2006, Reed Elsevier Group plc filed its Answer and Reed Elsevier Inc. filed its Answer and Counterclaims, asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duties, tortious interference with contract and seeking a declaratory judgment that the Contract Renewal provides the exclusive remedy of termination for Reed's decision to sell National Manufacturing Week.

NAM is not entitled to recover on any of the claims asserted in its Amended Complaint for many reasons. These reasons include, but are not limited to the following:

LEGAL_US_E # 71511206.1 35150.00008
07/28/06 2:13 PM

- Reed's sell of National Manufacturing Week is not a breach of the Contract Renewal;

- The Contract Renewal itself provides the exclusive remedy for Reed's decision to sell National Manufacturing Week. *See Island Cash Register v. Data Terminal Systems*, 244 A.D.2d 117, 676 N.Y.S.2d 146 (1998)(New York law presumes contracts to be enforceable and honors elections of exclusive remedies therein).

- Even if NAM's exclusive remedy was not termination, it would still be barred from recovery under the Contract Renewal because NAM's actions described herein constitute material breaches of that agreement, relieving Reed from any further performance. *See* Restatement (Second) of Contracts §237 (stating that "…it is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that there be no uncured material failure by the other party to render any performance due at an earlier time."); *See also Steele v. Isikoff*, 130 F.Supp.2d 23, 32. (D. D.C. 2000)(quoting same);

- Even if NAM had not released Reed from performance of the Contract Renewal by its material breaches of that agreement, NAM would have no compensable damages because the only conceivable harm flowing to NAM from Reed's decision to sell National Manufacturing Week would be a claim

- 4 -

of lost profits, which is precluded by NAM's status as a non-profit organization. *See Seafarers Welfare Plan v. Phillip Morris*, 27 F. Supp. 2d 623, 627 (D. Md. 1998)(explaining that plaintiff labor-management trust funds were non-profits that "cannot claim to have suffered any economic harm in the form of lost profits."); *Hopkins v. Wardley Corp.*, 611 P.2d 1204, 1206 (Utah 1980)(observing that a recovery of lost profits is "anomalous" for an organization that is required by law to be a non-profit corporation). In any event, any damages purportedly suffered by NAM will be exceeded by those suffered by Reed as established in its Counterclaims and should therefore be set-off under the doctrines of set-off and recoupment.

In contrast to NAM's deficient claims, Reed Elsevier Inc. is entitled to recover damages under each of the counts set forth in its Counterclaim. As set forth above, New York courts honor contracts and enforce their terms as they are written. *See Island Cash Register v. Data Terminal Systems*, 244 A.D.2d 117, 676 N.Y.S.2d 146 (1998). NAM's failures to honor its obligations under the Contract Renewal constitute material breaches of that agreement, as well as breaches of the implied covenant of good faith and fair dealing. *See Travellers Int'l, A.G. v. Trans World Airlines*, 41 F.3d 1570, 1574-77 (2d Cir. N.Y. 1994)(finding that a joint venturer's failure to use its best efforts to promote the venture with adequate marketing

- 5 -

materials was a violation of the implied contractual obligation of good faith in the parties' agreement).

In addition, NAM's self-promotion and competitive efforts at the expense of the National Manufacturing Week joint venture constitutes a breach of NAM's fiduciary duties to Reed. *See Blue Chip Emerald LLC v. Allied Partners Inc.*, 299 A.D.2d 278, , (N.Y. App. Div. 1st Dep't 2002)(explaining that coventurers owe each other "a duty of undivided and undiluted loyalty" under New York law). NAM's competitive actions also amount to tortious interference with contractual relationships with its customers. *Pm Servs. Co. v. Odoi Assocs.*, 2006 U.S. Dist. LEXIS 655 (D.D.C. Jan. 4, 2006).

For all of these reasons, NAM is entitled to recover nothing on its claims in this action, while Reed Elsevier Inc. is entitled to restitution and/or compensatory, special, consequential, incidental and punitive damages in an amount to be determined at trial.

LEGAL_US_E # 71511206.1 35150.00008
07/28/06 2:13 PM

Dated:    July 31, 2006                    Respectfully submitted,


By: /s/_____

Scott M. Flicker, Esq. (D.C. Bar No.
425825)
PAUL, HASTINGS, JANOFSKY &
WALKER, LLP
875 15th Street N.W., Suite 1000
Washington D.C. 20005

Of Counsel:

J. Allen Maines (pro hac vice)
William K. Whitner (pro hac vice)
Michael D. Grider (pro hac vice)
600 Peachtree Street, N.E., Suite 2400
Atlanta, Georgia 30308-2222
Telephone:  (404) 815-2400

*Attorneys for Defendant Reed Elsevier
Group plc and
Defendant/Counterclaim-Plaintiff Reed
Elsevier Inc.*

LEGAL_US_E # 71511206.1 35150.00008
07/28/06 2:13 PM

## CERTIFICATE OF SERVICE

This is to certify that I have this day filed the foregoing STATEMENT OF THE CASE and served a copy of same to the following counsel of record via electronic means using the CM/ECF system:

Tonya G. Gaskins-Saunders, Esq.
Jack McKay, Esq.
Jerald A. Jacobs, Esq.
Jennifer Behr, Esq.
Pillsbury Winthrop Shaw Pittman LLP
2300 N Street, N.W.
Washington, DC 20037-1128

This 31st day of July, 2006.

_s/_____
Scott M. Flicker

LEGAL_US_E # 71511206.1 35150.00008
07/28/06 2:13 PM