IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ASSOCIATION OF MANUFACTURERS,<br><br>  Complainant and<br>  Counter-Respondent,<br><br>v.<br><br>REED ELSEVIER INC.,<br><br>  Respondent and<br>  Counter-Complainant,<br><br>and<br><br>REED ELSEVIER GROUP plc,<br><br>  Respondent. | Case No. 1:06CV00990 (HHK) |

## NATIONAL ASSOCIATION OF
## MANUFACTURERS' STATEMENT OF THE CASE

Pursuant to the Order for Initial Scheduling Conference issued by this Court, National Association of Manufacturers ("NAM") hereby submits the following Statement of the Case:

On November 18, 1991, NAM and Reed Elsevier Inc. and Reed Elsevier Group plc, through Reed Exhibitions, (collectively "Reed"), executed a sponsorship agreement whereby NAM agreed to serve as the primary sponsor of a trade show owned and produced by Reed known as "National Manufacturing Week." This agreement was the beginning of an extremely successful contractual relationship between NAM and Reed that lasted over fifteen years. The parties executed a series of contracts with contract renewals executed prior to the

expiration of the old contract. After many years of contract renewals, on June 14, 2004, NAM and Reed executed the contract that governs the contractual relationship between the parties until 2009 and the contract at issue in this case (the "Contract"). The Contract provided that NAM would continue to sponsor National Manufacturing Week until 2009 and in return Reed would pay fixed compensation plus additional incentive fees. Throughout the duration of the contractual relationship, the parties always dealt at arms length through their contacts and never formed a joint venture or partnership.

The Contract provided that NAM was the primary sponsor of National Manufacturing Week and a number of "shows within the show" (collectively called the "Event"), all of which occur over a week-long period in March of each year. The Contract further provided that Reed was obligated to "organize, promote and manage" the National Manufacturing Week trade show for years 2005 – 2009 and pay NAM a minimum of $200,000 per year for its sponsorship along with other compensation. Reed paid approximately $407,000 pursuant to the Contract for NAM's sponsorship of the National Manufacturing Week shows in 2005 and 2006.

Under the Contract, NAM was required to promote the National Manufacturing Week show on its website, in fax and e-mail "blasts" to its members, and in its print and on-line newsletters. NAM was also required to "recruit and secure two 'top name' keynote speakers for the Event each year." NAM satisfied all terms under the sponsorship agreement, as did Reed up through the 2006 show.

Despite the success of the National Manufacturing Week show, Reed announced, on May 10, 2006, that it intended to sell the National Manufacturing Week show to Canon

Communications, LLC ("Canon"), along with seven other trade shows and a magazine. After the announcement, Senior Reed officials told NAM that Reed's industrial show portfolio was "extremely profitable" but not growing as rapidly as Reed would like and that Reed wanted to invest its resources in areas such as health care that were perceived to have more growth potential. There is no fair reading of the contract that gives Reed the right to cancel or to unilaterally assign the agreement, but they moved forward with the sale nonetheless.

Shortly after receiving notice of Reed's intent to sell the show, the purchaser, Canon, advised NAM that it did not intend to honor Reed's obligations set forth in the Contract. Thus, not only did Reed sell National Manufacturing Week in violation of the Contract; Reed sold the show to a party who had no intention of honoring the Contract. Reed breached the Contract and is responsible for damages that would place NAM in the same position had the contract been performed.

On May 30, 2006, NAM filed suit against Reed and its parent, Reed Elsevier Group plc. On June 12, 2006, NAM filed an amended complaint requesting damages in the amount of $3.5 million for breach of contract. NAM's breach of contract claim is straightforward and its injury certain based on the breach by Reed.

In response to allegations regarding its undisputed breach, Reed countered with a defense that twisted a right of NAM to cancel upon the sale into an obligation of NAM to terminate as its sole remedy if Reed chose to ignore its contractual obligations and simply walk away.

Reed has also concocted a series of alleged minor breaches by NAM to try to divert attention away from Reed's breach. Reed never raised these or any compliance issues with NAM until after NAM notified Reed that Reed's sale of the trade show violated Reed's obligations under the Contract. The alleged breaches that Reed has invented are inaccurate, as they misrepresented instances where Reed instructed NAM to cease particular activities, and amount to a ploy by Reed to disguise the absence of any real defense in this case. Even if the alleged breaches were factually correct (which they are not), they are not individually or cumulatively material breaches that would justify Reed's blatant and total breach.

Reed has also postulated that the contract between the parties created a joint venture, apparently to create fiduciary duties that do not normally exist between contracting parties. A joint venture is, of course, not to be inferred between parties to arms length contracts that explicitly establish the parties' rights and obligations. US Airways Group, Inc., v. British Airways plc, 989 F.Supp. 482 (S.D. N.Y. 1997) (holding that "[e]ntry into a series of cooperative agreements does not manifest an intent to enter a joint venture"). NAM should be awarded its damages for Reed's breach, which include $600,000 in base payments due under the Contract plus other lost benefits arising from Reed's unequivocal breach.

Dated: August 3, 2006               Respectfully submitted,


                                    _____/s/_____
                                    Jack McKay (DC Bar No. 159335)
                                    Jerald A. Jacobs
                                    Tonya G. Gaskins-Saunders (DC Bar No. 484414)
                                    PILLSBURY WINTHROP SHAW PITTMAN LLP
                                    2300 N Street, NW
                                    Washington, DC 20037-1128
                                    Phone:     (202) 663-8554
                                    Facsimile: (202) 663-8007

400435006v1